UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

AUG 2 4 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-504-GWU

LOUELLA G. REEVES,                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 CFR
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

Reeves

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 CFR 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See  20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

>   pain arising from the condition; or (2) whether the objectively
>   established medical condition is of such a severity that it can
>   reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Reeves

physical and mental impairments.  Varley  v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Louella G. Reeves, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of a depressive disorder, an anxiety
disorder, a panic disorder, a pain disorder, a history of alcohol dependence in full
sustained remission, borderline intellectual functioning, gastroesophageal reflux
disease (controlled with medication), hypertension (controlled with medication),
migraine headaches (controlled with medication), moderate degenerative disc
disease of the lumbar spine, and degenerative joint disease of the knees (status post
bilateral arthroscopy).  (Tr. 20).  Nevertheless, based in part on the testimony of a
vocational expert (VE), the ALJ determined that the plaintiff retained the residual
functional capacity to perform a significant number jobs existing in the economy and,
therefore, was not entitled to benefits.  (Tr. 23-6).  The Appeals Council declined to
review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of
the plaintiff's age, education, and work experience could perform any jobs if she
were limited to "sedentary" level exertion, and also had the following non-exertional
restrictions.  (Tr. 479).  She: (1) would require the option of sitting or standing at will;
(2) could not climb, stoop, crouch, kneel, or crawl; (3) could only perform jobs that
would accommodate someone with borderline intellectual functioning; and (4) had

7

no more than a "limited but satisfactory" ability to follow work rules, deal with work stresses, function independently, maintain attention and concentration, handle detailed instructions, demonstrate reliability, and adapt to change. (Tr. 479-80). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 480).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Initially, the plaintiff alleged disability due to nerves, arthritis, swelling in the right leg, numbness in the right foot, high blood pressure, and cholesterol. (Tr. 76). However, on appeal, she does not challenge the ALJ's physical residual functional capacity findings. The Court notes that the ALJ's functional capacity assessment was consistent with the opinion of the plaintiff's treating orthopedic surgeon, Dr. Cletus McMahon, who performed several operations on her knees. (E.g., Tr. 292-306). Dr. McMahon noted on numerous occasions that the plaintiff would be restricted from performing "bent knee activities" and should not engage in "prolonged" walking or standing. (Tr. 222-3, 225, 295). No other examining source suggested restrictions and, although the plaintiff was extensively worked up for chest pain, multiple examinations showed no evidence of a myocardial infarction. (Tr. 158, 165, 182-4). The hypothetical question is also more restrictive than the limitations

8

given by state agency reviewers. (Tr. 226-32, 263-71). Therefore, the hypothetical physical factors are supported by substantial evidence.

The plaintiff does object to the ALJ's mental restrictions, pointing to a mental residual functional capacity assessment completed by a source at Cumberland River Comprehensive Care Center (CCC), Peggy Sargent, RN, on October 22, 2003. The plaintiff had been seen at the CCC for over a year at this point, but Nurse Sargent indicated that she was unable to assess the plaintiff's ability to make any performance adjustments or most occupational adjustments, except for her ability to deal with stresses, which was described as "seriously limited but not precluded." (Tr. 325-6). She also indicated that the plaintiff would have a "seriously limited but not precluded" ability to behave in an emotionally stable manner and relate predictably in social situations. (Tr. 326).

The plaintiff maintains on appeal that this opinion from a treating source should have been given great weight. However, a registered nurse is not an "acceptable medical source" under 20 C.F.R. Section 404.1513.[1]

The ALJ correctly noted that the plaintiff was primarily given Global Assessment of Functioning (GAF) scores of 50 or above, showing no more than "moderate difficulty in social, occupational, or school functioning" per the Diagnostic

---

[1]In any case, when Nurse Sargent's limitations were given to the VE, he testified that the hypothetical individual would still be able to perform the jobs he described. (Tr. 481-2).

9

Reeves

and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34.

A consultative psychological examiner, Dr. Kenneth Starkey, assessed the plaintiff in June, 2002, as having a GAF of 62, reflecting only mild difficulty. (Tr. 193). He also felt that the plaintiff would only have mild to moderate impairment of social and occupational functioning. (Id.). State agency psychologists who reviewed the record at this point concluded that the plaintiff did not even have a "severe" mental impairment. (Tr. 233, 248).

More important is the fact that the plaintiff's primary treating psychiatrist at the CCC generally indicated a higher level of functioning. While she was initially given a GAF of 45 by Dr. John Schremly in September, 2002, indicating "serious impairment in social, occupational, or school functioning," another staff psychiatrist, Dr. Lea Hayag, put the plaintiff's GAF score at 55 in October, 2002 and again in August, 2003. (Tr. 341, 377). This would indicate only "moderate difficulty in social, occupational, or school functioning" per the DSM.

On November 20, 2003, the plaintiff was admitted to the psychiatric unit at Corbin Baptist Hospital, stating that she was depressed and having thoughts of suicide. (Tr. 401). The attending psychiatrist, Dr. William Briscoe, assessed a GAF of 40 at admission, but estimated that the highest level of functioning over the past 12 months was "50+." (Tr. 404). By the time of the plaintiff's discharge on November 24, Dr. Briscoe noted that her depression had improved rapidly and gave

10

Reeves

a discharge GAF of 50. (Tr. 399-400). While a GAF score of 40 represents "major impairment" in several areas, and a score of 50 would still represent serious symptoms per the DSM-IV-TR, there is no indication in the mental evidence that the plaintiff had been functioning at such a low level for twelve consecutive months. Dr. Briscoe's estimate of the plaintiff's level of functioning for the prior 12 months was actually consistent with the treating psychiatrist, Dr. Hayag. Accordingly, the mental factors in the hypothetical question are also supported by substantial evidence.

The decision will be affirmed.

This the   24   day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11